Clayton J. Nave, Jr. ("the father"), appeals from a judgment denying his request for a modification of custody of the parties' two younger children, holding him in contempt for failing to pay child support and certain college expenses of Angela D. Nave ("the mother"), and denying his request for retroactive child support.
The parties were divorced in November 2000. Pursuant to an agreement of the *Page 374 
parties, the divorce judgment provided that the parties would have joint legal and physical custody of the parties' three children, two sons who were 15 and 10 years of age, respectively, at the time of the trial of this action in October 2004, and a daughter who was 8 years of age at that time. The agreement provided that the children would reside with each parent during alternating months; that the father would pay the mother child support in the amount of $1,200 per month until six months after the anticipated date of the mother's graduation from a technical college; and that the father would pay the cost of the tuition and books associated with the mother's course of study at the technical college.
At the time the divorce judgment was entered, the father was employed as a design drafter at an aerospace firm, earning in excess of $100,000 per year. In approximately April 2003, the father was laid off from his employment and was unemployed for approximately one year. By the time of the trial in this matter in October 2004, the father was again employed as a design drafter, earning approximately $54,000 per year.
At the time the divorce judgment was entered, the mother was attending J.F. Drake State Technical College ("J.F. Drake") and was studying computer information systems technology. In May 2002, the mother completed her course work and received an associate degree in applied technology (a two-year degree). At the time of the trial in this matter in October 2004, the mother was working part-time for a computer firm as a systems engineer, earning approximately $33,000 per year. She was also attending Athens State University and pursuing a bachelor degree.
The parties live in the same community, and the children are able to attend the same school and participate in the same activities regardless of which parent has physical custody during a given month. Since the divorce, the children have resided with the parents in alternating months as provided in the divorce judgment, but the parents have demonstrated an inability to cooperate in raising the children. In general, the father refuses to talk to the mother by telephone, and the father has, on several occasions, refused to accept certified letters from her. The trial court observed, however, that the parties were equally responsible for the absence of effective communication between the parties.
In December 2002, the mother determined that the older son, who was then 13 years old, was too rebellious for her to control, and she abruptly decided to grant the son his wish to live with the father. Accordingly, the mother took the older son to his paternal grandmother's house and left him with the grandmother until the father could pick him up later that same day. Since that day, the older son has lived exclusively with the father and has had no contact with the mother except in court. The mother has expressed a desire to restore the relationship, but the son has refused all contact with the mother.
In January 2003, the father filed a petition to modify the custody of the children, in which he alleged a material change of circumstances, including use of marijuana and neglect of the children by the mother. The petition requested sole custody of the children and that the mother be ordered to pay child support. In April 2003, the mother filed an answer and counterclaim that requested that she be awarded sole custody of the two younger children; that the older son be allowed to live with the father; that the father be required to pay child support; and that the father be held in contempt for failing to pay child support and for violating certain other provisions of the divorce judgment. *Page 375 
A pendente lite hearing was held on April 17 and 23, 2003, during which the trial court heard ore tenus testimony from the parties, the older son, and others. The trial court entered a pendente lite order, granting the father sole custody of the oldest child, leaving the custody of the two younger children unchanged, providing for telephone contact between the parties and the children, requiring both parties to undergo anger-management counseling, and requiring both parties to submit to periodic drug tests.
The action was tried ore tenus on October 19 and 20, 2004, and the trial court heard testimony from the parties, the parties' two older children, teachers, school counselors, friends of the parties, and others. On November 5, 2004, the trial court entered a judgment that awarded the father sole legal and physical custody of the older son; continued the joint physical and legal custody of the two younger children, with the children living with each parent during alternating months; ordered the mother to pay prospective child support of $424.26 per month with respect to the older son; found the father in contempt for failing to pay child support and certain college expenses of the mother; sentenced the father to 5 days of incarceration for each of 8 instances of contempt, or a total of 40 days incarceration, and suspended the sentence for 2 years; and entered an award against the father totaling $10,873.68 with respect to the past-due child-support obligation and unpaid college expenses. The father did not file a timely postjudgment motion, but he did file a motion to set a supersedeas bond that was denied as untimely filed. The father appealed.
The father contends that the trial court erred (1) in failing to award him sole custody of the two younger children, (2) in finding him in contempt for failure to pay child support, (3) in finding him in contempt for failure to pay certain of the mother's college expenses, and (4) in failing to award him retroactive child support with respect to the older son.
The touchstone for custody decisions is the "welfare and best interests of the child." Willing v. Willing,655 So.2d 1064, 1065 (Ala.Civ.App. 1995). We note the presumption of correctness accorded to a trial court's judgment:
 "When this Court reviews a trial court's child-custody determination that was based upon evidence presented ore tenus, we presume the trial court's decision is correct: `"A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong. . . . "`Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), quoting Phillips v. Phillips, 622 So.2d 410, 412
(Ala.Civ.App. 1993) (citations omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. `In child custody cases especially, the perception of an attentive trial judge is of great importance.' Williams v. Williams, 402 So.2d 1029, 1032
(Ala.Civ.App. 1981)."
Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001).
To the extent that the trial court did not make detailed written findings of fact, we must assume that "`the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.'" Ex parte Fann,810 So.2d at 636 (quoting Lemon v. Golf Terrace OwnersAss'n, 611 So.2d 263, 265 *Page 376 
(Ala. 1992)). Moreover, we note that it is not the role of the appellate courts to reweigh the evidence. Ex parteBryowsky, 676 So.2d 1322, 1324 (Ala. 1996).
Because the parties had joint custody, this case is governed byEx parte Couch, 521 So.2d 987 (Ala. 1988), which held that the best-interest standard applies to the modification of an existing joint-custody arrangement. However, although the material-promotion standard of Ex parte McLendon,455 So.2d 863, 866 (Ala. 1984), does not apply, the father is required to prove that "a change in circumstances has occurred such that it was in the [children's] best interests that the [judgment] be modified to transfer [sole] physical custody."Means v. Means, 512 So.2d 1386, 1388
(Ala.Civ.App. 1987).
The father argues that he should be awarded sole custody of the two younger children because (1) the mother was frequently using marijuana, (2) the mother neglected the children and was not a proper parent, and (3) the joint-custody arrangement is untenable and is not in the best interest of the children.
We have reviewed the record and must conclude that there is substantial evidence to support the trial court's judgment on this issue. There was conflicting evidence of drug use by both parties. The evidence in the record shows, however, that, between the pendente lite hearing in April 2003 and the trial in October 2004, both parties took several drug tests, all of which were negative. Thus, the trial court could reasonably have found that the mother had stopped using drugs by the time of the trial.
The father also presented evidence of the mother's shortcomings as a parent, including the mother's lack of participation in, or indifference to, the children's school and extracurricular activities, and the mother's general failure to properly care for the children's physical needs. The mother presented evidence, including testimony from her friends and coworkers, showing that she was appropriately involved in the children's lives and activities, that she was a good parent, and that many of the children's academic problems were equally bad during the months that the children resided with the father. The mother also presented evidence of the father's anger, including evidence of a public outburst against the mother that was witnessed by the two younger children, the father's excessive or inappropriate use of corporal punishment, and the father's refusal to communicate with the mother concerning the children. The trial court could have disbelieved much of the father's evidence or it could have determined that various factors favoring the father were balanced by other factors favoring the mother.
Although the parties admittedly were not able to cooperate in rearing the children, the trial court found that neither party was "able to satisfy the Court that the best interests of the [two younger children] would be appreciably enhanced by awarding either of the parties the primary physical custody and control of the minor children." It therefore continued the alternating custody that the parties had originally agreed to and that was incorporated into the divorce judgment. Although this case illustrates many of the potential problems with alternating custody arrangements, see Headrick v. Headrick,916 So.2d 610 (Ala.Civ.App. 2005), and Poe v. Capps,599 So.2d 623 (Ala.Civ.App. 1992), on the basis of the record before us in this case, we cannot conclude that the trial court abused its discretion in continuing the existing custody arrangement. With respect to the issue of custody, the judgment is supported by substantial evidence in the record, including the evidence *Page 377 
discussed above. In addition, there was testimony that the parties' 10-year-old son enjoyed living with the mother, although he thought that the father's home was more like a family. Also, the trial court observed that both parents were equally responsible for the communication problems affecting the children. Further, the evidence in the record would support a conclusion that continued alternating custody might be the best, and perhaps only, way to insure a reasonable level of contact between the children and each of the parents.
The father next contends that the trial court erred in finding him in contempt for failing to pay child support between June 2002 and November 2002 and for failing to reimburse the mother for certain college expenses. The standard of review of a judgment of contempt is as follows:
 "[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm."
Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App. 1994).
Rule 70A, Ala. R. Civ. P., governs contempt proceedings arising out of civil actions. Rule 70A(a)(2)(C)(ii) defines criminal contempt as "[w]illful disobedience or resistence of any person to a court's lawful . . . order . . ., where the dominant purpose of the finding of contempt is to punish the contemnor."[1] To establish that a party is in criminal contempt, the contempt petitioner must prove beyond a reasonable doubt that the party to be held in contempt "was subject to a `"lawful order of reasonable specificity, "`that the party violated that order, and that the party's violation of the order was wilful." LA. v. R.H., 929 So.2d 1018
(Ala.Civ.App. 2005) quoting Ex parte Ferguson, 819 So.2d 626,629 (Ala. 2001) (quoting in turn United States v.Turner, 812 F.2d 1552, 1563 (11th Cir.1987)).
The dispositive issue with respect to the father's failure to pay child support is whether the divorce judgment was reasonably specific as to that obligation. According to the father, the divorce judgment provided that his obligation to pay child support terminated in June 2002, which was six months after the anticipated completion date of the mother's course of study at J.F. Drake.[2] The mother argued at the trial, and the trial court implicitly found, that the father's child-support obligation was extended by the terms of the divorce judgment until November 2002 because the mother needed an additional academic quarter to complete all of the courses required for graduation.
The father's obligation to pay child support and college expenses is set forth in paragraphs 3 and 4 of the parties' agreement that was incorporated into the divorce judgment. Those paragraphs provide as follows:
 "3. The [father] shall pay to the [mother], as the amount of differential child support . . ., the sum of [$1,200.00] per month, beginning on September 1, *Page 378 
2000, and continuing for each month hereafter until six (6) months after the [mother's] graduation from her present computer course of study at J.F. Drake State Technical College by the receipt of an associates degree, in accordance with more specific delineation of said educational status and requirement as set out in paragraph 4 below. As of that time, neither party will owe child support to the other party. . . .
 ". . . .
 "4. The [father] shall pay for or reimburse the [mother] the actual costs of (after written documentation provided by the [mother]) her tuition and required books necessary for her to complete the course of study which has been heretofore referenced.
 "The [mother's] educational plans and/or course of study as has been referenced severally above will be as follows:
 "It is understood by the parties that the [mother] is more than half-way toward obtaining an associates degree in computer studies at J.F. Drake State Technical College, with the feasibility of completion in three (3) quarters being undisputed given appropriate effort and attention by the [mother]. Therefore, the triggering time for all purposes in this Separation Agreement (six (6) months after completion of the associates degree program) assumes and requires the [mother] attend three (3) consecutive quarters on a full-time basis, making passing grades, or otherwise meets the requirements for her associates degree, with the [mother] beginning no later than the Winter quarter immediately next following the Fall of the year 2000. Therefore, the triggering event referenced at various places in this Separation Agreement of six (6) months after the [mother's] graduation shall be deemed to be six (6) months after the completion of the said three (3) consecutive quarters, beginning with the next Winter quarter at said institution. However, should the [mother] need an additional (fourth) quarter to finish a course or two which had been unavailable to her previously, the [father] shall pay for the necessary tuition and books as well as paying for the necessary child care which is incident to any such fourth quarter attendance by the [mother]."
(Emphasis added.)
An agreement, including one merged into a divorce judgment, is ambiguous when it is reasonably susceptible to more than one meaning. Ex parte Little-page, 796 So.2d 298 (Ala. 2001).
 "When a trial court adopts a separation agreement, it is merged into the final judgment of divorce. A judgment of divorce is to be interpreted or construed like other written instruments. Whether an agreement is ambiguous is a question of law to be determined by the trial court. If the agreement is susceptible to more than one meaning, then an ambiguity exists. If only one reasonable meaning clearly emerges, then the agreement is unambiguous."
Wimpee v. Wimpee, 641 So.2d 287, 288
(Ala.Civ.App. 1994) (citations omitted).
Neither party has provided us with a clear explanation of the meaning of paragraphs 3 and 4 of the divorce judgment as they relate to the extension of father's obligation to pay child support if the mother required an additional (fourth) quarter in order to graduate.[3] At the trial, the *Page 379 
mother argued that, because she was attending school full-time, the father's obligation to pay child support was extended until six months after the end of the additional quarter. In contrast, the father argues that the parties' agreement assumed that the mother could and would complete her required course work in three consecutive quarters; if she needed an additional fourth quarter to graduate, the father argues, his obligation to pay for tuition and books would be extended, but not the "stop date" for child-support payments.
We conclude that the divorce judgment is reasonably susceptible to two meanings and is therefore ambiguous. Consequently, the trial court could not have found beyond a reasonable doubt that the father willfully violated a lawful order of reasonable specificity. See In re Powers, 523 So.2d 1079, 1082
(Ala.Civ.App. 1988) ("An error in judgment without clear and convincing evidence of bad faith intent is insufficient for a finding of contempt."); and In re Carter,412 So.2d 811, 812 (Ala.Civ.App. 1982). See also Epperson v.Epperson, 437 So.2d 571 (Ala.Civ.App. 1983) (affirming a finding of contempt where judgment was clear and unambiguous). Therefore, we reverse the judgment to the extent that it finds the father in contempt with respect to child-support payments due after June 2002.
Although we have determined that the provisions of the divorce judgment relating to payment of child support are ambiguous or inconsistent, we need not resolve how the provisions should be construed because the father does not argue that the trial court erred in entering a judgment against him for the balance of the child-support obligation, nor does his brief to this court contain argument and citation to legal authority concerning the reversal of the money judgment for the unpaid child support. We therefore need not consider that issue. See Boshell v.Keith, 418 So.2d 89, 92 (Ala. 1982); Rule 28(a)(10), Ala. R.App. P.; and McLemore v. Fleming, 604 So.2d 353, 353
(Ala. 1992).
The father also contends that the trial court erred in finding the father in contempt for failing to pay for certain of the mother's college expenses.[4] According to the father, the unpaid expenses were for courses not required for completion of the mother's agreed-upon course of study, and he was therefore not obligated to pay those expenses.
The trial court heard the evidence and found that the claimed expenses were required to be paid under the divorce judgment. We cannot conclude that those findings were erroneous. Moreover, we conclude that there was evidence to support a finding beyond a reasonable doubt that the father's failure to pay the balance of the college expenses was willful.
The father's final contention is that the trial court abused its discretion in failing to order the mother to pay child support with respect to the older son retroactive to the date of the filing of the father's petition to modify. The determination to modify child support retroactively is a decision committed to the sound discretion of the trial court. Rogers v.Sims, 671 So.2d 714, 717 (Ala.Civ.App. 1995); andVolovecky v. Hoffman, 903 So.2d 844, 850
(Ala.Civ.App. 2004). We have reviewed the record and do not find that the trial court abused its discretion in refusing to make the mother's child-support *Page 380 
obligation with respect to the older son retroactive. Among other things, the record does not contain evidence sufficient to compute the mother's child-support obligation payable in 2003.
We reverse the judgment to the extent that it finds the father in contempt with respect to the failure to pay child support. In all other respects, we affirm the judgment of the trial court. We remand the cause for the entry of a judgment consistent with this opinion.
The mother's request for the award of an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., and BRYAN, J., concur.
THOMPSON and PITTMAN, JJ., concur in the result, without writing.
[1] Although the trial court did not specify whether it found the father to be in civil or criminal contempt, for purposes of this appeal we have treated the contempt finding as a finding of criminal contempt because it appears that the purpose of the finding of contempt was to punish the father, rather than to insure compliance with the court's order.
[2] The father paid the required child support in full until May 2002, and paid a pro rata portion of the payment due in June 2002.
[3] In her brief to this court, the mother does not attempt to explain the proper construction of the relevant provisions. Instead, she makes only a conclusory reference to the evidence in the record that, she claims, supports the judgment.
[4] The trial court found that the unpaid balance of the mother's expenses for the fall quarter of 2001 was $1,650, and the unpaid balance for the winter quarter of 2002 was $1,021.68. The father apparently does not dispute the amounts of the expenses or claim that he has made payments that were not properly credited.