PITTMAN, Judge.
C.D.M. (“the mother”) appeals from a judgment of the Madison District Court, finding her in contempt of court and declining to find W.B.H. (“the father”) in contempt of court for violating a January 3, 2012, judgment modifying custody and visitation arrangements for the parties’ minor child. We affirm in part and reverse in part.

Procedural History

On December 11, 2012, the father filed a petition for custody and a motion for contempt sanctions, asserting that the trial court’s original custody order had awarded the parties joint legal custody of the child with the father having “periods of secondary physical custody/visitation rights with the minor child in accordance with the ‘Visitation/Physical Custody Schedule’ ” and that that original order had been modified by agreement of the parties and further order of the court on January 3, 2012.[1] The father asserted that, since the *963 entry of the January 3, 2012, judgment, the mother had refused to schedule and pay for travel arrangements for the father to visit the child during the summer and Christmas visitation periods set forth in the judgment. The father sought a judgment directing the mother to comply with the terms of the trial court’s January 3, 2012, judgment and holding the mother in contempt and an award of attorney fees; he also sought “sole” physical custody of the child and child support.
The mother filed an answer denying the allegations in the father’s petition. The trial court entered an order on January 24, 2013, setting the matter for a hearing on February 26, 2013, specifying the courtroom of the Madison County courthouse in which the hearing was to be held. Pursuant to the mother’s motion to reset, the trial court rescheduled the hearing for February 11, 2013. The mother later filed an amended answer and a counterpetition and a motion for contempt sanctions. In her counterpetition, the mother asserted that the January 3, 2012, judgment required the father to notify the mother within five days of his obtaining a job, so that child support could be recalculated and modified, but that the father had failed to comply with those requirements. The mother further asserted that the father had failed to pay her $296 in past-due medical expenses in accordance with the trial court’s judgment and that the father had failed to comply with “the method of notification” the father had been ordered to use in arranging travel plans for the child’s visitation. The mother requested that the trial court, among other things, hold the father in contempt for his failure to notify her of his employment, modify the father’s child-support obligation, modify prior judgments by requiring the father to bear the cost of travel expenses for the child for visitation purposes, modify the father’s visitation schedule with the child, and award her attorney fees.
The trial court entered a judgment on February 27, 2013, which stated, in pertinent part:
“After taking evidence and testimony ore terms and upon consideration of said pleadings, evidence and testimony, the Court makes the following findings regarding material changes affecting the *964 child’s welfare since this Court’s previous Order and issues its Orders and Findings as follows:
“1. The mother willfully avoided direct communication with the father, i.e. telephone and text messages. As a result of the mother’s willful conduct, the father was not allowed the opportunity to exercise his summer vacation in 2012 as outlined in this Court’s Order, dated January 3, 2012.
“2. On or about October 14, 2012, the father sent a certified letter to the mother advising the mother that he no longer had internet access and would like to correspond via phone or mail to plan for Christmas visitation. It is uncontroverted that the mother received the letter and did not make any attempt to communicate with the father other than email, even with knowledge of the father’s lack of internet access.
“3. On or about November 14, 2012, the father sent a certified letter to the mother advising the mother that he no longer had internet access and would like to correspond via phone or mail to plan for Christmas visitation. It is uncontroverted that the mother received the letter and did not make any attempt to communicate with the father other than email, even with knowledge of the father’s lack of internet access.
“4. As a result of the mother’s willful conduct in avoiding direct contact with the father, the father was not allowed the opportunity to exercise his Christmas vacation in 2012 as outlined in this Court’s Order, dated January 3, 2012.
“5. This Court finds that the mother is in willful contempt of this Court’s Standard Parenting Clauses; to wit, paragraph 4, which was made part of this Court’s Order, dated January 3, 2012; to wit, the mother willfully failed to make herself available for direct communication with the other [parent] for the purposes of discussion pertaining to the minor child.
“6. This Court has previously found the mother to be in contempt. Specifically, as addressed in paragraph 1 of the Final Order, dated February 25, 2010,
“ ‘The court has previously denied the mother’s request for continuance. Regarding the mother’s motion to have the court withdraw its contempt order of September 28, 2009, the court denies the same but modifies the jail sentence by splitting the five day sentence for contempt to serve two days. PROVID- ■ ED HOWEVER, said remaining sentence for the mother of three days is suspended and she may purge herself from said contempt by hereafter remaining in complete compliance with this Court’s prior orders as modified. The contempt of the mother shall remain purged from enforcement as long as the mother complies with all prior, current and future orders of this court and remains in said compliance.’ (emphasis added).
“7. Therefore, pursuant to this Court’s Order, dated February 25, 2010, and the mother’s failure to abide by all prior, current and future orders of this Court and to remain in compliance, the mother is to surrender herself to the Madison County Jail to serve the balance of her previous contempt sentence; to wit, three (3) days.
“8. The father is awarded make-up visitation with the minor child as follows:
*965 “a. Summer visitation, 2013, the father will have two (2) additional weeks.
“b. Christmas visitation, 2013, the father will have two (2) additional days.”
The trial court denied the father’s custody-modification petition. It further modified the January 3, 2012, judgment to require the parents to “make themselves available for direct communications with the other for the purpose of discussion pertaining to the minor child, to include visitation arrangements.” According to the trial court’s judgment, “[djirect communications means any form of communication, to include text, phone, letter, or any other electronic means.” The trial court modified the amount of the father’s child-support obligation to $301 per month, found that there was insufficient proof presented by the mother of a willful contempt committed by the father, required the mother to reimburse the father $3,000 resulting from her contemptuous behavior, and denied all other relief. The mother filed a post-judgment motion; that motion was denied by the trial court on March 18, 2013. The mother timely filed her notice of appeal to this court.

Facts

The father testified that he lives in Huntsville, where he has lived for 10 years. He testified that the mother had married, that her husband is in the United States Army, and that the mother and her husband had relocated with the parties’ child, first to Virginia and then to Alaska. The father testified that, once the mother and the child had relocated to Alaska, issues had arisen with regard to his visitation with the child. According to the father, at the time of the hearing, it had been over a year since he had seen the child. The father testified that, when he had tried to contact the mother to make travel arrangements and discuss dates for the child’s summer visitation, she had informed him that he was outside the required 30-day notice period and that the child was not going to attend her summer visitation in Alabama. He testified that, in an effort to work out the child’s travel arrangements, he had telephoned the mother on several occasions, but had had to leave messages, and he thought he had also sent the mother a few text messages. He testified that “it took a little while for her to respond to my phone calls and finally talk to me on the phone to inform me that [the child] would not be coming for her summer visitation.” He stated that, when the mother had finally responded to his communications, it was after the 30-day notice period had passed.
The father testified that he has an email address but that he does not have access to e-mail on a regular basis. He stated that he does not have a computer and that he had communicated that fact to the mother and that that is why he had resorted to telephone calls and text messages to contact the mother. He also stated that he had sent certified letters and had had his attorney write letters on his behalf, but the mother had not responded to those letters. The father presented a certified letter, dated October 14, 2012, that he had written to the mother requesting that she telephone him to plan for the child’s Christmas visitation, informing her that he no longer had Internet access, and requesting that she telephone or mail him a response. A certified-mail receipt indicated that that letter had been received on October 19, 2012. The father stated that he had spoken to the child on the telephone twice a week, that he had tried to speak to the mother about scheduling visits when he made those telephone calls, and that, at one time, after asking the child to put the mother on the telephone, *966 he had heard the mother say that she did not want to talk at that time.
The father admitted that he had not sent the mother an e-mail or a letter with information regarding who would be flying with the child for the visits. He stated that he has a “smartphone,” which he uses to access the Facebook social-networking Web site. He stated, however, that he did not know whether his smartphone had the capability to send e-mail and that he had never tried to use it for e-mail. He stated that the last time he had updated his Facebook page, he had done so from a friend’s computer. He stated that he has friends who have Internet access but that he had not asked if he could send an e-mail from their computers. He testified that he owns an AK.-47 assault rifle that he could probably sell and use the proceeds to buy himself a computer.
The father testified that he had been employed by Turner Beverage, delivering beer, for over a year. He stated that he had told the mother that he had gotten a job when he had informed her that he would not be able to visit the child for spring break in 2012. He admitted, however, that he had failed to inform the mother within five days after he had obtained a job or to pay to have his child support recalculated and a modified agreement drafted reflecting the new child-support amount, as required by the January 3, 2012, judgment.
The mother testified that she wanted the judgment to state that she and the father would communicate by e-mail to protect them so that they could be accountable for their conversations. She testified that there had been discrepancies or misunderstandings in the past and that, if everything is in an e-mail, they can refer back to the e-mails instead of arguing about what the other said. She stated that she could use an e-mail in case of litigation to protect herself and to make sure she is doing what she is supposed to do. She testified that the father had never e-mailed her the information she would need to purchase airline tickets for his Christmas or summer visitation with the child. She admitted, however, that she had refused to speak to the father on the telephone.

Discussion

On appeal, the mother first argues that the trial court erred by issuing sanctions against her without first issuing notice pursuant to Rule 70A(c)(2), Ala. R. Civ. P. Rule 70A(c)(2) states, in pertinent part, that
“the person against whom the [contempt] petition is directed shall be notified (1) of the time and place for the hearing on the petition and (2) that failure to appear at the hearing may result in the issuance of a writ of arrest pursuant to Rule 70A(d), [Ala. R. Civ. P.,] to compel the presence of the alleged con-temnor.”
The mother does not argue that she had not been apprised of the time and place for the hearing on the father’s petition; indeed, she concedes on appeal that the case was reset due to a scheduling conflict of the mother’s counsel. Thus, we interpret the mother’s argument as an assertion that the court’s failure to notify the mother that her failure to appear at the hearing could result in a writ being issued for her arrest requires reversal of the contempt finding. The mother argues that, “regardless of whether a party shows up for trial, the Rule 70A requirements must still have been met for the issuance of sanctions.” The mother does not provide any citation to authority in support of that assertion, however, and we are unable to locate any authority on point.
“It is the appellant’s burden to refer [an appellate court] to legal authority that supports its argument. Rule *967 28(a)(10), Ala. R.App. P., requires that the argument in an appellant’s brief include ‘citations to the cases, statutes, [and] other authorities ... relied on.’ Consistent with Rule 28, ‘[w]e have stated that it is not the function of [an appellate] court to do a party’s legal research.’ Spradlin v. Spradlin, 601 So.2d 76, 78 (Ala.1992) (citing Henderson v. Alabama A & M University, 488 So.2d 392, 392 (Ala.1986) (‘ “Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.” Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App.1984).’)).”
Board of Water & Sewer Comm’rs of the City of Mobile v. Bill Harbert Constr. Co., 27 So.3d 1223, 1254 (Ala.2009). Because the mother has cited no legal authority supporting her argument that the trial court erred to reversal in failing to notify her that her failure to attend the hearing could result in the issuance of a writ for her arrest, we decline to address that argument. We note, however, that, because the mother was present at the hearing and had been given notice of the time and date of the hearing and no writ for her arrest was issued, it appears, at first glance, that any deficiency in the hearing notice amounted only to harmless error. See Rule 45, Ala. R.App. P.
Although the argument is not properly developed, it appears that the mother is also attempting to argue that she was denied due process to the extent the trial court referenced and relied upon the 2010 order in ordering the mother to serve the suspended jail time. In Fludd v. Gibbs, 817 So.2d 711, 714 (Ala.Civ.App.2001), this court stated that “[a] finding of criminal contempt is appropriate where a party has shown disobedience to a court’s order and where the acts complained of were specific, identifiable violations from the past.” The father’s contempt motion in the present case referenced that the mother had been previously held in contempt, and it is clear from the court’s prior orders and the father’s motion that criminal contempt was contemplated. See Fludd, 817 So.2d at 714. Like in Fludd, we conclude that the mother had sufficient notice that she was facing sanctions for criminal contempt. Id.
The mother next argues that the trial court erred in finding her in contempt because, she says, “the required elements of contempt were not in evidence.”
“ ‘Rule 70A, Ala. R. Civ. P., governs contempt proceedings that arise out of civil actions. Rule 70A(a)(2)(C)(ii) defines criminal contempt as “[w]illful disobedience or resistance of any person to a court’s lawful ... order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor.” In order to establish that a party is in criminal contempt of a court order, a contempt petitioner must prove beyond a reasonable doubt that the party against whom they are seeking a finding of contempt was subject to a “ ‘lawful order of reasonable specificity,’ ” that the party violated that order, and that the party’s violation of the order was willful. Ex parte Ferguson, 819 So.2d 626, 629 (Ala.2001) (quoting United States v. Turner, 812 F.2d 1552, 1563 (11th Cir.1987))’
“L.A. v. R.H., 929 So.2d 1018, 1019 (Ala.Civ.App.2005). Furthermore, we have held that, ‘[a]bsent an abuse of discretion, or unless the judgment of the trial court is unsupported by the evidence so as to be plainly or palpably wrong, the determination of whether a party is in contempt is within the sound discretion of the trial court.’ Shonkwiler v. Kris *968 ka, 780 So.2d 703, 706 (Ala.Civ.App.2000).”
Preston v. Saab, 43 So.3d 595, 599 (Ala.Civ.App.2010).
The mother argues that the trial court’s January 3, 2012, judgment was ambiguous because the parties’ agreement called specifically for an e-mail to schedule the father’s summer and Christmas visitation with the parties’ child, whereas the trial court’s “Standard Parenting Clauses” directed the parties to make themselves available for direct communications with each other for the purposes of discussion pertaining to the minor child. The mother argues that, because those two provisions conflict, “there was no order of reasonable specificity” and, thus, no violation of that order by the mother. In Nave v. Nave, 942 So.2d 372, 379 (Ala.Civ.App.2005), this court determined that the divorce judgment in that case was reasonably susceptible to two meanings and was, therefore, ambiguous. This court determined that, because the judgment was ambiguous, “the trial court could not have found beyond a reasonable doubt that the father willfully violated a lawful order of reasonable specificity.” 942 So.2d at 379. This court stated in Nave:
“An agreement, including one merged into a divorce judgment, is ambiguous when it is reasonably susceptible to more than one meaning. Ex parte Littlepage, 796 So.2d 298 (Ala.2001).
“ ‘When a trial court adopts a separation agreement, it is merged into the final judgment of divorce. A judgment of divorce is to be interpreted or construed like other written instruments. Whether an agreement is ambiguous is a question of law to be determined by the trial court. If the agreement is susceptible to more than one meaning, then an ambiguity exists. If only one reasonable meaning clearly emerges, then the agreement is unambiguous.’
“Wimpee v. Wimpee, 641 So.2d 287, 288 (Ala.Civ.App.1994) (citations omitted).”
942 So.2d at 378.
In the present case, we agree with the mother that the January 3, 2012, judgment was reasonably susceptible to two meanings with regard to the father’s summer and Christmas visitation with the child. Specifically, it appears that the mother read the judgment as requiring only e-mail communication with regard to that visitation; the language of the parties’ agreement that was incorporated into the judgment supports such a reading. The trial court, however, determined that the mother had violated the “Standard Parenting Clauses” that had also been incorporated into the judgment. The trial court determined that the mother had violated the portion of the judgment that related to the parties’ communication regarding the father’s summer and Christmas visitation; however, we conclude that the judgment was susceptible to two meanings with regard to communication between the parents about the father’s summer and Christmas visitation. Thus, like in Nave, the judgment in the present case was not one of reasonable specificity that the trial court could have found, beyond a reasonable doubt, that the mother had willfully violated. We therefore reverse the judgment insofar as it found the mother in contempt with respect to her failure to communicate with the father in a manner other than e-mails regarding his summer and Christmas visitations with the child.
The mother last argues that the trial court erred in failing to find the father in contempt. Specifically, she asserts that the father should have been held in contempt for his failure to inform her that he had gained employment and his *969 resulting failure to have his child-support obligation recalculated, for his failure to email her regarding his summer and Christmas visitation with the child, and for his failure to pay her for past uninsured medical expenses when her testimony that he had failed to pay that debt was unrefuted. “When evidence in a contempt case is presented ore tenus to the trial court, the trial court’s finding regarding contempt is presumed correct.” Gilbert v. Nicholson, 845 So.2d 785, 791 (Ala.2002). We note that the trial court heard evidence indicating that the mother had evaded the father’s attempts to contact her, that the father did not have the ability to e-mail the mother, and that the mother had refused to otherwise communicate with the father. Thus, the trial court could have determined that any violation of the trial court’s judgment by the father was not willful. We conclude, therefore, that the trial court was within its discretion to decline to find the father in contempt.

Conclusion

We reverse the trial court’s judgment finding the mother in contempt, and we remand the cause for the trial court to enter a judgment consistent with this opinion. We affirm the judgment in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ„ concur.

. The parties' agreement that was incorporated into the trial court’s January 3, 2012, judgment contains the following language with regard to the father's Christmas and summer visitation with the child:
*963 “The Father will email the Mother no later than thirty (30) days prior to the day that said visit shall begin, providing the Mother with the date and time that he is available to depart from the Huntsville International Airport. If the Father is not the person who will be flying to retrieve the minor child, he will email the Mother within the same time frame, providing the Mother with the full name and birth date of the person who will be flying to Alaska to retrieve the minor child, and the date and time that said person is available to depart from the Huntsville International Airport. Failure to email the Mother with the information no later than thirty (30) days in advance of the visit shall result in forfeiture of the visit.”
The trial court's "Standard Parenting Clauses,” however,' which were also incorporated into the judgment, contained the following language:
"At all times hereafter, each parent shall keep the other informed of the respective business and home telephone numbers and their respective street and mailing addresses. Both parties will make themselves available for direct communications with the other for the purposes of discussion pertaining to the minor children; provided, however, neither parent will harass or burden the other with excessive or abusive telephone calls, or any other such non-productive communication. Both parents shall refrain from delegating their responsibility of communicating with the other parent to third parties, except in bona fide emergencies, and will at reasonable times and places make themselves available to communicate directly with the other parent pertaining to the needs and interest of the children.”