This is a child-support-modification case. James E. Spears, the father, was divorced from Jeannie M. Spears, the mother, on August 29, 2002. In the final judgment, the father was ordered to pay $906 per month in child support and $300 per month in periodic alimony, and he was also required to assume payment of the following marital debts: "[Ford Motor Credit Card] of $5,704.40, all federal and state tax liabilities incurred during the marriage, all American Express accounts, the phone bill of $163.00, the power bill of $403.00, the Samson Banking Company debt, Citizens Bank, Capital One, [and] Ted's, Lucky Lawn." The trial court reserved jurisdiction "to order the payment of college expenses for the parties' two minor children."
On April 15, 2003, the mother petitioned the court to order the father to provide for college expenses for the parties' son who was scheduled to begin a course of study at the University of Alabama in August 2003. On May 5, 2003, the father responded to the mother's petition and moved the court to recalculate his existing child-support obligation for the parties' remaining minor child. After an ore tenus proceeding, the trial court entered an order on September 12, 2003, reducing the father's child-support obligation by $266. The order stated, in part:
 "The court has reviewed the list of expenses submitted by each party and recognizes that they exceed available income. The court finds this to be due, primarily, to poor financial management during the marriage and was contributed to by both parties. The court concludes, however, that sufficient funds are available from both parents (restructure of debt under Chapter 13 may be required), for both to contribute to [the son's] education.
 "Had there been no divorce the court is convinced that [the son] would have attended college, but finds no substantial difference in available income had such been the case."
The father was ordered to pay $200 per month toward the cost of the son's college education expenses.
The father appeals, arguing that requiring him to pay $200 per month in postminority educational support will cause him undue financial hardship and that the trial court incorrectly computed his child-support obligation.
Our standard of review in a case involving a modification of a child-support order is well settled. Matters related to child support, including modifications of a child-support order, rest soundly within the trial court's discretion and will not be disturbed on appeal, absent a showing that the ruling is not supported by the evidence and, thus, is plainly and palpably wrong. Berryhill v. Reeves, 705 So.2d 505 *Page 137 
(Ala.Civ.App. 1997); Williams v. Braddy, 689 So.2d 154 (Ala.Civ.App. 1996).
 "In Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), our supreme court held that the trial court has discretion whether to order postminority support at all, and that, in exercising that discretion, the trial court shall consider
 "`all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education.'
 "Ex parte Bayliss, 550 So.2d at 987 (emphasis in original). In addition, the trial [court] may consider
 "`the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance.'
"Id."
Stinson v. Stinson, 729 So.2d 864, 868 (Ala.Civ.App. 1998).
The mother testified that the son had been accepted to the University of Alabama. The mother estimated that the cost of attending the University of Alabama would be approximately $5,020 per semester. She based this estimate on a report she received from the university. The mother further testified that the son had received a Pell grant in the amount of $1,650 per semester and an option to receive a loan for approximately $1,300 per semester. The son was also awarded two one-time scholarships in the amount of $1,100.
The mother testified that she currently earns $3,073.75 per month. She also receives $300 per month in periodic alimony. The mother testified that her total monthly expenses are $2,841.
The father testified that he currently earns $4,152 per month. He further testified that his total monthly expenses were $3,480, which included his monthly $906 child-support obligation and his $300 alimony obligation. The father also testified that he had been unable to pay the debts that he was ordered to pay in the divorce judgment.
The testimony shows that the son has the required commitment and aptitude for a college education. The trial cou obviously concluded that any difficulty the father may have in providing financial support for his son's education would not be as great as he testified to. Further, the father did not argue that he has had any difficulty in making his child-support payments over the past year. The court reduced the father's monthly child-support payment by $266 and required the father to pay $200 per month toward the son's educational expenses, which represents approximately one-half of his son's educational expenses after deductions for the Pell grant, the loan, and scholarships are made. We cannot say that the trial court was plainly and palpably wrong in requiring the father to pay $200 per month in postminority educational expenses.
Next, the father argues that the trial court erred in computing the amount of child support he owes for the remaining child. The father argues that the court should have deducted from his gross monthly income and added to the mother's gross monthly income the $300 in alimony he pays to the mother. We are unable to find any direct authority on this proposition; however, we find that the father's argument lacks merit for several reasons.
This court held in Waltman v. Waltman, 528 So.2d 867, 868
(Ala.Civ.App. *Page 138 
1988), that "the sole purpose of periodic alimony is the supportof the dependent former spouse. . . ." (Emphasis added.) The awarding of periodic alimony is an attempt to maintain the economic status of the parties, to the extent possible, until the receiving spouse is able to maintain a lifestyle similar to the one enjoyed during the marriage. Orr v. Orr, 374 So.2d 895, 897
(Ala.Civ.App. 1979), writ denied, 374 So.2d 898 (Ala. 1979),cert. denied and appeal dismissed, 444 U.S. 1060,100 S.Ct. 993, 62 L.Ed.2d 738 (1980).
The father has been ordered to pay alimony and child support. If the father is allowed to deduct the amount he pays in alimony to the mother and she is required to report that amount, this will cause a change in the child-support calculation percentages that each parent contributes. The result would be that the wife's alimony, which is solely for her support, would be reduced by the shift in the percentage based on income. We do not think this is the intent of Rule 32, Ala. R. Jud. Admin; rather, it is clear that the intent of Rule 32 is to require an alimony recipient to report the amount of alimony received from a former
marriage.[1]
Rule 32(B)(2)(a), Ala. R. Jud. Admin., provides, in part:
 "(a) `Gross income' includes income from any source, and includes, but is not limited to, salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trusts, annuities, capital gains, Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and preexisting periodic alimony."
The Comment to Rule 32, Ala. R. Jud. Admin., provides:
 "The guidelines will provide an adequate standard support for children, subject to the ability of their parents to pay, and will make awards more equitable by ensuring more consistent treatment of persons in similar circumstances.
 "These guidelines are based on the income shares model developed by the National Center for State Courts and are founded on the premise that children should not be penalized as a result of the dissolution of the family unit but should continue to receive the same level of support that would have been available to them had the family unit remained intact."
The father argues that a purpose of Rule 32 is to equitably divide the support obligation between the parents of divorced children. Based on the Comment to Rule 32, this is an incorrect assertion. The purpose of Rule 32 is to provide support to children of divorced parents. The desired equitability component relates to all parents who must pay child support. Rule 32 seeks to avoid a situation where one family is required to provide a different amount of child support than another family that has an identical number of children and earns the same amount of money. The trial court did not err in its calculation of the father's child-support obligation.
AFFIRMED.
THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, J., concurs in part and dissents in part, with writing.
MURDOCK, J., concurs in the result in part and dissents in part, with writing.
[1] We recognize that the legislature enacted § 30-2-55, Ala. Code 1975, which automatically terminates a recipient spouse's periodic alimony upon remarriage. However, not all states have such a statute. See, generally, 47 A.L.R. 5th 129 (1997). *Page 139