THOMPSON, Judge.
Kenneth J. Sexton (“the husband”) and Laniece Sexton (“the wife”) were divorced by a December 17, 2003, judgment of the trial court.[1] The divorce judgment ordered the husband to pay the wife $900 a month in periodic alimony, beginning January 1, 2004, and to pay attorney fees in the amount of $1,000 and court costs consisting of a filing fee in the amount of $157 within 30 days of the entry of the divorce judgment.
On November 10, 2004, the wife filed in the trial court a petition for a rule nisi requesting that the trial court hold the husband in contempt for his alleged failure to pay the periodic alimony, attorney fees, *456 and court costs as ordered in the December 17, 2003, divorce judgment. The wife requested that, upon a finding of contempt, the husband be incarcerated until such time as he purged himself of the contempt. The husband answered; although he admitted that he had failed to pay those court-ordered amounts, he asserted as a defense his inability to pay them. The husband filed a counterclaim seeking to terminate, or substantially reduce, his pe-riodfc-alimony obligation.
On June 6, 2005, the trial court held a hearing at which it received ore tenus and documentary evidence. Our review of the evidence reveals the following relevant facts. The parties were married for approximately two and a half years. No children were born of the parties’ marriage. Both parties have a child from a previous marriage; the wife has a daughter and the husband has a son.[2]
As of the date of the hearing in this matter, the total amount that the husband owed the wife for periodic alimony, attorney fees, and court costs, including applicable interest, was $18,919.12. During his testimony, the husband admitted that he had not paid those court-ordered amounts but asserted as a defense that his failure to pay them was not “deliberate” because, he claimed, he lacked the financial ability to pay them.
The record reveals that the husband’s financial condition deteriorated following the parties’ divorce. During the parties’ marriage and at the time of their divorce, the husband was employed by M.D. Ray Contractors and Coosa Contracting (“Ray Contractors”) as an accountant.[3] The husband testified that he was laid off from his job at Ray Contractors in April 2004 and that he remained unemployed until November 2004. He said that he was hired by Caddell Construction Company (“Cad-dell Construction”) as an accountant/contract manager in November 2004; he continued to work at Caddell Construction at the time of the hearing in this matter.
The husband testified that at the time of the hearing in this matter he lived in a one-bedroom, one-bathroom, “mother-in-law” apartment that he had moved into in January 2005; he no longer owned the house that he had been awarded pursuant to the parties’ divorce judgment. The husband testified that he refinanced the mortgage on his house in April 2004 “to get some cash out of it.” The record includes a copy of an April 5, 2004, mortgage in favor of CitiFinancial Corporation, LLC (“CitiFinancial”), on that property; that mortgage secured the payment of a promissory note in the principal amount of $121,282.78. The husband said that following the parties’ divorce he was unable to make the monthly mortgage payments on his house. He also stated that CitiFinan-cial initiated foreclosure proceedings and that the house was sold in May 2005 for $92,500. The husband testified that he still owed the deficiency balance of approximately $28,800.[4]
*457 The husband also testified that following the parties’ divorce but before he was laid off from Ray Contractors CitiFinancial repossessed his vehicle due to his inability to make the monthly payments on that vehicle. He said that after CitiFinancial sold that vehicle it sued him for a deficiency balance of $11,524.48. He introduced into evidence a copy of CitiFinancial’s March 2005 complaint in that lawsuit, and he testified that that lawsuit was still pending. The husband testified that after his vehicle was repossessed he leased a 2000-model-year truck for $410 per month but that as of the date of the hearing he was three to four months behind on his lease payments. He introduced into evidence a copy of the June 1, 2005, statement for that leased vehicle reflecting that he owed $1,640.12.
The husband also testified that he had paid $477 per month in child support to his first wife for their 15-year-old son until shortly before the hearing in this matter. The husband said that his first wife died in May 2005, at which time his son moved in with him. The husband stated that his first wife had never sued him for nonpayment of child support and that he had been current with his child-support payments at the time of his first wife’s death.
The husband introduced into evidence an exhibit entitled “Ken Sexton’s Monthly Expenses”; that exhibit reflected monthly “take home pay” in the amount of $8,415.54[5] and monthly expenses in the amount of $8,720. That exhibit read in its entirety:
“Truck $ 410
“Rent
(Will have to rent larger apartment with bedroom for [the son]) $ 475
“Utilities $ 430
“Car Insurance
(Will have additional car insurance for the son) $ 100
“Health Insurance
(Will have to put the son on his health insurance) $ 230
“Life Insurance $ 50
“Food & Groceries $ 900
“Gas $ 250
“Entertainment (movies, bowling, etc. with the son) $ 200
“Car Repairs (tires, oil, etc.) $ 100
“Clothing and Cleaners $ 200
“Hail- cuts $ 50
“Christmas Club/Gifts $ 25
“Dentist/Doctor Visits ([the son] has asthma) ([the son] may need braces) $ 200
“Grooming Items $ 50
“Cell phone (for [the son]) $ 50
“Total $ 3,720
“ ‘Take Home Pay’ $ 3,415.54”
(Bold typeface in original.)
At the time of the hearing in this matter, the husband’s son had been living with him for less than a month. The husband explained at the hearing that the $475 amount for “rent” was for the one-bedroom, one-bathroom, “mother-in-law” apartment. He testified that he needed a bigger place to accommodate his son. He also explained that the $230 amount for “health insurance” did not include family coverage for his son, which costs an addi *458 tional $200 per month; the son previously had been covered under his first wife’s health-insurance policy. The husband testified that the $200 amount for his son’s asthma and braces were expenses that he did not have at the time of the parties’ divorce. The husband also testified that when his son turns 16 in November 2005 he would like to purchase the son a used truck and that he would have the added expenses of automobile insurance coverage for the son as well as maintenance and gasoline for the son’s truck.
The husband also introduced into evidence his personal-checking-account statements from December 17, 2003, through March 16, 2005. He divided those statements into two exhibits — the first set was for the 12-month period, beginning December 17, 2003, through December 16, 2004, and the second set was for the 3-month period, beginning December 16, 2004, through March 16, 2005. The husband testified that he paid his living expenses out of that checking account.
During the period December 17, 2003, through December 16, 2004, the husband’s checking account reflected that his average monthly deposits and his average monthly withdrawals were approximately the same, i.e., approximately $2,100. The husband testified that during that period of time (from December 17, 2003, through December 16, 2004), he did not have any other moneys from which to pay the periodic alimony, attorney fees, and court costs.
During the period December 16, 2004, through March 16, 2005, the husband’s checking account reflected that his average monthly deposits were $3,681.95 and his average monthly withdrawals were $3,600.19. The husband testified that those deposits consisted of his “take home pay” from Caddell Construction; the husband’s checking-account statements reflect bimonthly deposits from Caddell Construction. When asked by his attorney, “And does this represent all of the income [except for April and May 2005] that you had in 2005?” the husband responded “yes.” The husband testified that he did not deposit any extraordinary amounts into his checking account during April and May 2005. He further testified that his employment income was his only source of income and that he did not have any assets or retirement accounts that he could liquidate to pay the court-ordered amounts.
On cross-examination, the husband admitted that he had not paid the amount he owed the Internal Revenue Service (“IRS”) at the time of the parties’ divorce.[6] When questioned about a number of other lawsuits in which he was involved and judgments entered against him, the husband admitted that he had not paid a 1995 judgment in favor of TransAmerica Financial Services in the amount of $64,623; he claimed that the other judgments entered against him had been paid and that the other lawsuits in which he had been involved had been dismissed.
Regarding the wife’s financial condition, the record indicates that at the time of the hearing in this matter the wife lived in the marital residence that she had been awarded pursuant to the parties’ divorce judgment; the wife had owned that house before the parties’ marriage. The record indicates that at the time of the hearing in this matter the outstanding mortgage indebtedness on that house was approxi *459 mately $120,000. The wife also testified that she owned a rental house that she had been awarded pursuant to the parties’ divorce judgment; she had owned that rental property during the parties’ marriage. The record indicates that that property had an outstanding mortgage indebtedness of approximately $43,000 to $45,000. The wife testified that she received $600 in monthly rental payments and that she used those payments to pay for maintenance and expenses related to that property-
At the time of the hearing in this matter, the wife worked as a realtor for RE/ MAX Properties where she had worked during the parties’ marriage and at the time of their divorce. The wife testified that her income had remained substantially the same as it had been at the time of the parties’ divorce. The wife’s 2003 income-tax return reflected business income in the amount of $42,731 ($69,854 in real-estate commissions minus $27,123 in business-related expenses). The wife’s 2004 income-tax return reflected business income in the amount of $40,487 ($67,619 in real-estate commissions minus $27,132 in business-related expenses).
On June 9, 2005, the same date as the hearing in this matter, the trial court entered a judgment on the case action summary finding the husband “to be in contempt for his failure to pay alimony, arrears set at $18,919.12. Court orders [the husband] into custody until he pays $18,919.12. Court denies [the husband’s] petition for modification of alimony.”[7] On that same date, the trial court entered another judgment on the case action summary stating that the “Court allows [the husband] to remain out of custody pending appeal.” The husband timely appealed.
On appeal, the husband contends that the trial court erred in finding him in contempt for the nonpayment of periodic alimony, attorney fees, and court costs and for ordering him incarcerated until he purged himself of the contempt. The husband argues that he presented uncontro-verted evidence of his inability to pay and that, having presented such evidence, the burden shifted to the wife to prove, beyond a reasonable doubt, that he had the ability to pay. He asserts that the wife failed to meet that burden of proof.
In Sealy v. D’Amico, 789 So.2d 863 (Ala.Civ.App.2000), this court stated:
“Our standard of review of the trial court’s judgment is the ore tenus rule:
“ ‘Where a trial court receives conflicting ore tenus evidence, its judgment based on that evidence is presumed correct, and this court will not reverse such a judgment absent a finding of a plain and palpable abuse of discretion. Brannon v. Brannon, 477 So.2d 445 (Ala.Civ.App.1985). The presumption of correctness is based in part on the trial court’s unique ability to observe *460 the parties and the witnesses and to evaluate their credibility and demean- or. Hall v. Mazzone, 486 So.2d 408 (Ala.1986).’
“Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999).
“Additionally, we must also consider the law governing this court’s review of a finding of civil contempt:
“ ‘The purpose of a civil contempt proceeding is to effectuate compliance with court orders and not to punish the contemnor. The inability to pay child support or alimony is a defense to contempt. When the accused presents evidence that he is unable to pay the ordered amount, the burden o[f] proof is on the complainant to prove beyond a reasonable doubt that he can comply.’
“Watts v. Watts, 706 So.2d 749, 751 (Ala.Civ.App.1997) (citations omitted).”
Sealy v. D’Amico, 789 So.2d at 866.
In Hurd v. Hurd, 485 So.2d 1194 (Ala.Civ.App.1986), this court stated:
“The rule is that if it be shown at a contempt hearing that the party cited is unable to comply with the decree of the court due to want of means rather than mere contumacy, then there is no contempt. Thomas v. Thomas, 406 So.2d 939 (Ala.Civ.App.1981). In other words, the lack of ability to comply is a complete defense to a contempt proceeding for failure to pay. Thomas v. Thomas, supra.”
485 So.2d at 1195. Further, “[t]his court has previously recognized that imprisonment, as a means of coercing payment, may not be imposed when the failure to pay alimony is due to a present inability to comply with the order, rather than due to contumacy.” Summers v. Summers, 661 So.2d 243, 244 (Ala.Civ.App.1995) (citing Ex parte Talbert, 419 So.2d 240 (Ala.Civ.App.1982)).
In Summers v. Summers, supra, this court reversed the trial court’s order requiring the husband in that case to remain incarcerated until he paid $22,976.99 in alimony arrearage. In that case, the husband’s testimony revealed that he had a 90% disability and that he received $1,500 per month in Veterans’ Administration disability benefits and $600 per month in Social Security disability benefits. He testified that his disability income, which totaled $2,100 per month, was his only income and that his living expenses totaled approximately $2,000 per month. The husband in Summers also testified that he had only one bank account and that the current balance in that account was approximately $30. He further testified that he did not own any real estate and that his only assets were a 1975 Chevrolet truck, worth approximately $400, and a boat, worth approximately $2,000. Summers v. Summers, 661 So.2d at 244.
Based on that evidence, this court concluded that
“[t]he husband presented evidence that he [was] unable to pay the arrear-age. The burden shifted to the wife to prove beyond a reasonable doubt that the husband ha[d] the ability to pay the ordered amount. Morgan v. Morgan, 582 So.2d 1147 (Ala.Civ.App.1991).
“The wife failed to present any evidence to demonstrate that the husband ha[d] the financial means available to allow him to purge himself of contempt. Consequently, the wife failed to meet her burden of proof.... Morgan, 582 So.2d 1147.”
Summers v. Summers, 661 So.2d at 244-45.
In the present case, the husband presented evidence indicating that his financial condition deteriorated following the parties’ divorce. He was unemployed *461 from April 2004 until November 2004. Further, the husband’s testimony and his personal-checking-account statements revealed that his “take home pay” was approximately $3,500 and that his monthly living expenses were approximately $3,400 plus additional expenses for his son, such as $230 per month for health-insurance coverage.[8] The husband’s testimony revealed that those additional expenses for his son were due, in part, to his first wife’s death, his assumption of custody of his son, his son’s asthma and probable need for braces, and his son’s age. The husband further testified that he did not own any real estate or a vehicle and that he has no other sources of income or assets from which to pay the court-ordered amounts. The husband also presented evidence indicating that he has substantial debts.
We conclude that the husband presented sufficient evidence indicating that he is unable to pay the court-ordered amounts. Thus, the burden shifted to wife to prove beyond a reasonable doubt that the husband has the ability to pay the court-ordered amounts. Summers v. Summers, 661 So.2d at 244-45. The wife failed to present any evidence to demonstrate that the husband had the financial means to pay the court-ordered amounts and to purge himself of the contempt. Consequently, the wife failed to meet her burden of proof. Summers v. Summers, 661 So.2d at 245. Therefore, we conclude that the trial court erred in finding the husband to be in contempt and ordering him incarcerated until he purged himself of the contempt. Accordingly, the trial court’s judgment as to this matter is due to be reversed.
Next, the husband contends that the trial court abused its discretion in failing to deny his request for the termination of, or a substantial reduction in, his periodic-alimony obligation.
In Sellers v. Sellers, 893 So.2d 456 (Ala.Civ.App.2004), this court stated:
“ ‘ “It is well established in Alabama that the modification of an alimony provision based upon changed circumstances is a matter that rests within the [trial] court’s sound discretion.”’ Stinson v. Stinson, 729 So.2d 864, 868 (Ala.Civ.App.1998) (quoting Ex parte Millard, 683 So.2d 1002, 1003 (Ala.1996)).
“ ‘The modification of periodic alimony is a matter within the discretion of the trial court, and on appeal its judgment on that matter is presumed correct.... The trial court may modify an award of periodic alimony if the petitioner proves that a material change of circumstances has occurred since the last award was made. The trial court may consider several factors, including the earning capacity of each spouse, the recipient’s needs and the payor’s ability to meet those needs, and the estate of each spouse.’
“Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala.Civ.App.1995) (citations omitted). Furthermore, this court is not permitted to reweigh the evidence on appeal or to substitute its judgment for that of the trial court. See Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996).”
Sellers v. Sellers, 893 So.2d at 461. We also note that whether the parties have dependent children is an additional factor to be considered in modification proceedings as to periodic alimony. Murphy v. Murphy, 470 So.2d 1297 (Ala.Civ.App.1985).
*462 Based on the evidence presented to the trial court and already detailed in this opinion, we conclude that a material change in circumstances had occurred in the husband’s financial condition and that the trial court abused its discretion in failing to modify the husband’s periodic-alimony obligation. Accordingly, the trial court’s judgment as to that matter is reversed, and the cause is remanded for the trial court to reexamine the wife’s present financial needs in light of the husband’s present financial ability to meet those needs and to consider awarding the wife a lesser amount of periodic alimony. Morgan v. Morgan, 582 So.2d 1147 (Ala.Civ.App.1991).
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and PITTMAN, MURDOCK, and BRYAN, JJ., concur.

. The husband appealed the divorce judgment. On November 5, 2004, this court affirmed the divorce judgment, without an opinion. Sexton v. Sexton, 915 So.2d 1190 (Ala.Civ.App.2004) (table).

. We assume for purposes of this opinion that the parties' marriage was the second marriage for both of them. At the time of the hearing in this matter, the wife received $737 in child support from her first husband for their daughter. The husband's financial obligations regarding his son are discussed later in this opinion.

. The husband is not a certified public accountant.

.We note that the record is somewhat confusing regarding whether the husband owes the deficiency balance on the promissory note. The record includes a copy of a January 21, 2005, warranty deed in which the husband conveyed his interest in the property to Lucien Stronach as trustee of the Jasmine Hill Trust ("the trustee”) and the trustee agreed to assume and pay the "mortgage.'' The record also includes documentation relating to the May 2005 sale of the property; that *457 documentation indicates that CitiFinancial agreed to accept a payoff of $92,500 on the promissory note and, upon receipt of that payment, to release the mortgage on the property. That documentation further indicates that the "sellers” were the husband and the trustee and the "purchaser” was the trustee.

. The husband’s personal-checking-account statements introduced into evidence at the hearing indicate that the husband’s paychecks from Caddell Construction were deposited into his checking account by "direct deposit.” Those statements further indicate that at the time of the hearing the husband's monthly "take home pay” was at least $3,496.

. Although the record in the present case does not contain evidence of the specific amount of the IRS tax lien, the record in the prior divorce action contained evidence indicating that the IRS tax lien was in excess of $500,000. See Slepian v. Slepian, 355 So.2d 714, 716 (Ala.Civ.App.1977) (for a discussion of taking judicial notice of matters in prior actions).

. We note that the wife introduced into evidence as "Exhibit One” an exhibit entitled "Computation of Amount Due from Kenneth Sexton,” listing $18,919.12 as the total amount that the husband owed her pursuant to the divorce judgment. That exhibit reflected $900 a month in periodic alimony for the months of January 2004 through June 2005, as well as unlabeled amounts for $1,000 and $157, both due on January 17, 2004. The $1,000 and $157 correlate to the amounts that the wife claimed the husband owed her for attorney fees and court costs pursuant to the divorce judgment. Although the June 9, 2005, judgment stated that the "alimony arrears” was $18,919.12, the wife’s "Exhibit One” clearly reflects that $18,919.12 was the total amount owed for the alimony arrearage, attorney fees, and court costs. Although the trial court made a typographical error by failing to specify that that amount included the attorney fees and court costs, we conclude that all of the claims have been adjudicated.

. Even assuming that some of the husband’s monthly expenses were somewhat excessive or unnecessary, the totality of the evidence clearly demonstrates that the husband was unable to pay the court-ordered amounts.